WALTER R. OPFERGELT and LEONORA OPFERGELT, by WILLIAM F. ALLEN, their next friend, *v.* JAMES L. STEVENS and J. L. STEVENS, JR., and MARY NAONE STEVENS.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED MARCH 27, 1896.          DECIDED APRIL 13, 1896.

JUDD, C.J., FREAR AND WHITING, JJ.

A bill was brought to cancel a deed as having been made with the intent to defraud, hinder and obstruct a creditor, O., in the collection of his demand, he having obtained. judgment against the grantor for breach of covenant of warranty on the sale of other property, having been evicted therefrom by a paramount title. Held, that O. was a creditor not from the date of eviction but from the date of the covenant of warranty.

It appearing to the court from the evidence and from the deed itself that it was made with intent to defraud, hinder and obstruct O. in the collection of the judgment, the deed was ordered to be cancelled.

OPINION OF THE COURT BY JUDD, C.J.

This is a bill to annul a conveyance of land. A recital of the facts is necessary. On November 27, 1877, one P. Naone con-

veyed his land in Pauoa, Honolulu, to his grandson, James L. Stevens, Jr., by deed recorded the same day it was executed. On the 26th January, 1878, the said P. Naone conveyed the same land to Mele Stevens, the last above named defendant (mother of J. L. Stevens, Jr.) January 14, 1888, J. L. Stevens and Mary (Mele) Stevens, in consideration of $2,500, conveyed the said land to one Philip Opfergelt by deed with a full covenant of warranty. On March 13, 1894, J. L. Stevens, Jr., conveyed this same land to one Lau Chong, who at the November term, 1894, of the Circuit Court, First Circuit, brought ejectment. against the Opfergelt minors (plaintiffs herein) and obtained judgment for possession of the land and evicted the plaintiffs. The grantors of P. Opfergelt (J. L. Stevens and wife) were requested to defend the suit under their warranty, but no defense was offered. At the February term, 1895, of the said Circuit Court, the Opfergelt minors brought suit against Mary N. Stevens and James L. Stevens, her husband, to recover damages for breach of their covenant of warranty. They were defaulted for non-appearance or answer, and the jury assessed the damages at $3,000, the amount claimed. Judgment was entered thereon, May 23, 1895, and an execution was taken out and returned unsatisfied, July 31, 1895, the defendants having no property.

On the 8th of March, 1894, the defendant, J. L. Stevens (sometimes his name is written J. L. Stephens), made a conveyance to his son, J. L. Stevens, Jr., of land described in Royal Patent No. 2759, L. C. Award No. 496, to Popolo, containing 1 acre, 2 roods, and situate in Puaanui, Lahaina, Maui, and of land situated at Kawaiahao, Honolulu, Island of Oahu, being a portion of the premises described in Royal Patent No. 1762, L. C. Award No. 195, to Kamahiai, conveyed to J. L. Stevens by deed of Kahaulelio, of the Island of Lanai, dated January 16, 1893, recorded in Liber 141, page 108. The consideration expressed is ten dollars and his great affection (aloha nui) for his son, the grantee. The grantor reserves the right to live upon the premises during his life, with his son, and to share equally with

him in the rents received from the same. The consideration in the deed of Kahaulelio to J. L. Stephens is three hundred and fifty dollars.

The bill is brought to set aside the deed of James L. Stevens, senior, to J. L. Stevens, Jr., and prays that this may be done and that the premises may be ordered sold and the proceeds applied to the payment of said judgment. Should the deed be declared void?

It is well expressed in the 8th volume Am. & Eng. Encycl. of Law, p. 749, that "to constitute a fraudulent conveyance there must, as a rule, be a concurrence of three elements; that is to say, there must be a creditor to be defrauded, a debtor intending to defraud, and a conveyance of property out of which the creditor could have realized his claim or some portion thereof."

The first question, then, is whether the plaintiffs, or their ancestors, the covenantees in the deed of Mary Stevens and husband, were creditors of Stevens antecedent to the conveyance now attacked. The general rule, says Bump, Fraudulent Conveyances (p. 496), is that "all claims which arise from the contract are in force from the date of the agreement. A covenant with a general warranty and a bond of conveyance take effect from the date of the instrument." Many cases are cited to sustain this proposition. In *Bibb v. Freeman*, 59 Ala. 612, quoted in 17 Southern Rep., p. 732, the court say: "The covenantee of a covenant of general warranty who is evicted by a title paramount and outstanding at the time the covenant is entered into is regarded as a creditor not from the time of eviction, but from the time the covenant was executed, and a subsequent voluntary conveyance is, as to him, void."

The date of the covenant in our case is January 14, 1888, some six years prior to the conveyance in question. The plaintiffs are therefore creditors.

We have no hesitation in saying, in view of the facts in this case, that the Stevenses were also debtors intending to defraud. The conveyance itself has badges of fraud upon it. It has the

consideration expressed of ten dollars, as if it were a conveyance to a *bona fide* purchaser for value. But to this is added the consideration of the grantor's great affection for his son. The reservation of a life residence on the premises to the father is inconsistent with a *bona fide* sale for value. And the trifling consideration of ten dollars for property for which $350 had been paid is evidential of fraud.

The attempt was made to show that the purchase of the Kawaiahao premises was made with the son's money, and thus to establish an equitable trust. But the son admits that he did not know that his father had conveyed the land to him until a month after the deed was made; and the father testifies that the person who drafted the deed, W. C. Achi (lately an attorney of the court), did not know that the purchase money of the Kawaiahao premises belonged to the son. The evidence that it was his money is altogether vague and unsatisfactory, and insufficient upon which to establish a trust. The parties say their earnings were commingled and kept together. "Some of it was perhaps money we got from the sale to Opfergelt," as the father says. No one testified how much or what proportion of the money was the son's earnings. To establish a trust, the recital in the deed would have to be falsified, for it is an entirely different consideration in character from that expressed in the deed, and where the deed is attacked by a creditor as fraudulent and made to hinder and delay the creditor in collecting his claim, the grantor should not be allowed to show any other consideration than that expressed in the deed. It was so held in *Ogden State Bank v. Barker*, 40 Pac. R. 766. That the parties defendant knew that they were likely to be held liable on their covenant with Opfergelt, and were anxious to avoid it, is clear from the evidence, and on the advice of the same person, Mr. Achi, they made the sale to Lau Chong and the conveyance in question, and we are satisfied that the latter one was made with the intention to defraud the plaintiffs.

The appeal is dismissed, the decree affirmed and the cause

remanded to the Circuit Court for such further proceedings as
may be necessary.

*L. A. Dickey,* for plaintiffs.

*A. Rosa,* for defendants.